IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

EDWIN PATRICIO PAREDES PADILLA,

                Petitioner,

v.

ROBERT GALOVICH, SAMUEL OLSON,
KRISTI NOEM, AND PAMELA BONDI,

                Respondents.

OPINION and ORDER

25-cv-863-jdp

---

Petitioner Edwin Paredes Padilla is a citizen of Ecuador. He entered the United States without inspection in 2021 and has been residing in the country without legal status ever since. On September 4, 2025, Paredes Padilla was arrested by Immigration and Customs Enforcement officers and issued a notice to appear for removal proceedings. He is being detained in ICE custody at the Douglas County jail in Superior, Wisconsin, while the removal proceedings continue. Paredes Padilla has applied for a writ of habeas corpus under 28 U.S.C. § 2241, contending that he has been unlawfully denied a bond hearing during the pendency of his removal proceedings. Dkt. 1.

This case is one of dozens of similar cases brought in recent months by non-citizens who were detained while residing in the United States without legal status. In July 2025, the Department of Homeland Security reversed its longstanding policy allowing discretionary bond for such individuals, determining instead that the Immigration and Nationality Act mandates that they be detained during the pendency of their removal proceedings. The overwhelming majority of courts have rejected DHS's new interpretation of the INA and concluded that non-citizens already residing in the United States are entitled to bond hearings. This court agrees with the majority position, so Paredes Padilla's petition for a writ of habeas corpus will

be granted and respondents will be ordered to give Paredes Padilla a bond hearing before an immigration judge.

BACKGROUND

The court draws the following facts from the petition and the supporting documentation filed by the parties along with their briefs. These facts are undisputed.

Petitioner Edwin Paredes Padilla is a citizen of Ecuador. He entered the United States without inspection by immigration officers in 2021 and has been residing in the United States without legal status ever since. Dkt. 1, ¶ 15. On September 4, 2025, ICE agents arrested Paredes Padilla at a construction site in Lakeville, Minnesota, pursuant to an arrest warrant issued by immigration officers. Dkt. 11-1. He was detained in ICE custody at the Douglas County jail and issued a notice to appear for removal proceedings. Dkt. 11-5. On September 18, an immigration judge denied Paredes Padilla bond while removal proceedings were pending, concluding that the INA mandated Paredes Padilla's detention and thus that the immigration judge lacked statutory authority to consider his request for bond. Dkt. 11-6. Paredes Padilla filed this petition for a writ of habeas corpus, contending that immigration officials unlawfully denied him an opportunity to request bond.

ANALYSIS

Paredes Padilla requests a writ of habeas corpus under 28 U.S.C. § 2241, contending that he was denied an opportunity to request bond during the pendency of his removal proceedings, in violation of the Immigration and Nationality Act (INA). A district court may grant a writ of habeas corpus if the petitioner shows that he is in custody in violation of the

2

Constitution or laws of the United States. 28 U.S.C. § 2241(c)(3). Habeas proceedings under § 2241 are an appropriate mechanism for immigrants in removal proceedings to challenge their ongoing detention. *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001).

One preliminary matter. In a habeas action, the proper respondent is generally the petitioner's immediate custodian. *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004). Petitioner named Robert Galovich, the former Douglas County jail administrator, as well as three federal government officials responsible for immigration enforcement. Galovich filed a response contending both that he was not properly served and that he is not a proper respondent, but he also affirmed that "Douglas County remains prepared to accept any further direction from the federal government." Dkt. 18. All the parties appear to agree that authority rests with the federal government respondents, who concede that they can offer Paredes Padilla a bond hearing if the court orders it. The court will dismiss Galovich as a respondent and the case will proceed against the government respondents only. *See Padilla*, 542 U.S. at 451–52 (Kennedy, J., concurring) (immediate custodian rule is waivable); *Moore v. Olson*, 368 F.3d 757, 758–60 (7th Cir. 2004) (issue of proper custodian is forfeited if not raised).

Paredes Padilla's request for relief turns on the application of two provisions in the INA that govern the detention of non-citizens during the pendency of removal proceedings: 8 U.S.C. § 1225(b)(2)(A) and 8 U.S.C. § 1226(a). The parties don't dispute the relevant facts, only the interpretation of the statutes. When construing a statute, the court begins with the statutory text, with "the understanding that unless otherwise defined, statutory terms are generally interpreted in accordance with their ordinary meaning." *Sebelius v. Cloer*, 569 U.S. 369, 376 (2013) (internal quotations omitted). The words of the statute must be read in context, "with a view to their place in the overall statutory scheme." *Roberts v. Sea-Land Servs.,*

3

*Inc.*, 566 U.S. 93, 101 (2012). Whenever possible, the statute should be construed "so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Corley v. United States*, 556 U.S. 303, 314 (2009) (quoting *Hibbs v. Winn*, 542 U.S. 88, 101 (2004)).

Section 1225(b)(2)(A) reads:

> Subject to subparagraphs (B) and (C) [exceptions not relevant here], in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

Detention is mandatory under § 1225(b)(2)(A), so release on bond during removal proceedings is unavailable. But aliens may be paroled "for urgent humanitarian reasons or significant public benefit." *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018) (quoting 8 U.S.C. § 1182(d)(5)(A)).

Section 1226(a) reads:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States.

Aliens detained under § 1226(a) may be released on bond and, under the applicable regulations, they have a right to request a bond hearing before an immigration judge. 8 C.F.R. § 236.1; § 1236.1; § 1003.19.

The parties agree that on its face, § 1226(a) applies to Paredes Padilla: he is an alien and he was arrested and detained on a warrant.[1] Dkt. 11-1. But the government contends that § 1225(b)(2)(A) also applies, so Paredes Padilla is ineligible for bond.

---

[1] "Alien" is defined in the INA to mean "any person not a citizen or national of the United States"). 8 U.S.C. § 1101(a)(3). In their briefs, the parties generally refer to such individuals as "non-citizens." This opinion uses both terms interchangeably.

4

Section 1225(b)(2)(A) has three elements: (1) an alien is an applicant for admission; (2) an alien is seeking admission; and (3) the examining immigration officer determines that the alien seeking admission is not clearly and beyond a doubt entitled to be admitted. There is no dispute as to the first and third elements. Paredes Padilla concedes that he is an applicant for admission as that term is defined in the INA. 8 U.S.C. § 1225(a)(1) ("An alien present in the United States who has not been admitted or who arrives in the United States . . . shall be deemed for purposes of this chapter an applicant for admission.") Nor does he contest that an examining immigration officer has determined that he is not entitled to admission.[2] The parties' dispute lies with the second element, that is, whether Paredes Padilla is an alien "seeking admission." The government contends that "seeking admission" is not an independent requirement, but simply a reference back to the requirement that the alien be an applicant for admission. Paredes Padilla contends that "seeking admission" is an independent element that excludes aliens who are already residing in the United States regardless of their legal status.

As Paredes Padilla notes in his briefs, more than 100 district courts have now considered this issue; the vast majority have rejected the government's interpretation of § 1225(b)(2)(A) and concluded that individuals like Paredes Padilla are entitled to a bond hearing under § 1226(a).[3] Another judge in this district recently adopted the majority view in *Quinapanta v.*

---

[2] Some district courts have questioned whether an ICE deportation officer is an "examining" immigration officer under § 1225(b)(2)(A). *E.g.*, *Echevarria v. Bondi*, No. cv-25-03252, 2025 WL 2821282, at *6 (D. Ariz. Oct. 3, 2025); *Jimenez v. FCI Berlin, Warden*, No. 25-cv-326, 2025 WL 2639390, at *7 (D.N.H. Sept. 8, 2025); *but see Cabanas v. Bondi*, No. 4:25-cv-04830, 2025 WL 3171331, at *7 (S.D. Tex. Nov. 13, 2025) (concluding that a deportation officer is an examining immigration officer). But neither party raised this issue in its briefs, so the court will assume that an ICE deportation officer is an examining immigration officer.

[3] *E.g.*, *Lopez v. Noem*, No. CV 25-16890, 2025 WL 3101889 (D.N.J. Nov. 5, 2025) (collecting cases); *Corona Diaz v. Olson*, No. 25 CV 12141, 2025 WL 3022170 (N.D. Ill. Oct. 29, 2025);

5

*Bondi*, No. 25-cv-795-wmc, 2025 WL 3157867 (W.D. Wis. Nov. 12, 2025), reasoning that the government's interpretation was inconsistent with the statutory text of the INA, canons of statutory interpretation, and longstanding agency practice.

This court agrees with the holdings of *Quinapanta* and the dozens of other cases like it that § 1225(b)(2)(A) does not mandate detention for individuals like Paredes Padilla who were arrested while residing in the United States without legal status. At first glance, the government's reading is plausible: it is difficult to see how someone could be an "applicant for admission" but not be "seeking admission." *See Cirrus Rojas*, 2025 WL 3033967, at *8 (reasoning that the phrase "seeking admission" is "simply another way of referring to aliens who are applicants for admission."). But on deeper examination, Paredes Padilla's interpretation is the better one, because it harmonizes § 1225 and § 1226, avoids rendering statutory language superfluous, and is better supported by the statutory text.

Whenever possible, statutes should be construed in a way that harmonizes all provisions; in other words, the broader statutory scheme should make logical sense. *Doermer v. Callen*, 847 F.3d 522, 527 (7th Cir. 2017). Section 1225 and section 1226 both govern detention of non-citizens during removal proceedings. As the Supreme Court observed in

---

*Chilel Chilel v. Sheehan*, No. C25-4053, 2025 WL 3158617 (N.D. Iowa Nov. 12, 2025); *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1256-61 (W.D. Wash. 2025); *Martinez v. Hyde*, No. 25-cv-11613, 2025 WL 2084238 (D. Mass. July 24, 2025); *Aceros v. Kaiser*, No. 25-cv-06924, 2025 WL 2637503 (N.D. Cal. Sept. 12, 2025); *Campos Leon v. Forestal*, 1:25-cv-1774, 2025 WL 2694763 (S.D. Ind. Sept. 22, 2025). The government identified four cases adopting its interpretation of the statute in its brief, and the court found a few others in its own research. *Pena v. Hyde*, No. CV 25-11983-NMG, 2025 WL 2108913 (D. Mass. July 28, 2025); *Chavez v. Noem*, No. 3:25-CV-02325-CAB-SBC, 2025 WL 2730228 (S.D. Cal. Sept. 24, 2025); *Vargas Lopez v. Trump*, No. 8:25CV526, 2025 WL 2780351 (D. Neb. Sept. 30,2025); *Cirrus Rojas v. Olson*, No. 25-cv-1437-bhl, 2025 WL 3033967, (E.D. Wis. Oct. 30, 2025); *Olalde v. Noem*, No. 1:25-cv-00168, 2025 WL 3131942 (E.D. Mo. Nov. 10, 2025); *Cabanas v. Bondi*, No. 4:25-CV-04830, 2025 WL 3171331 (S.D. Tex. Nov. 13, 2025).

*Jennings*, § 1225 most logically applies to non-citizens who are attempting to enter the country at the border or via a port of entry. 583 U.S. at 287–88. It provides for inspection of aliens seeking admission, § 1225(a)(3); establishes the process for expedited removal of inadmissible new arrivals, *Id.* § 1225(b)(1)(A)(i); and explains how aliens asserting credible fear of return are processed and placed into asylum proceedings. *Id.* § 1225(b)(1)(A)(ii). No warrant requirement is mentioned in § 1225, which is consistent with another provision of the INA that authorizes immigration officers to arrest without a warrant any alien who is "entering or attempting to enter the United States." 8 U.S.C. § 1357.

In contrast, § 1226 applies to non-citizens who are already residing in the United States. *Jennings*, 583 U.S. at 288–89. Warrants are generally required to arrest these individuals, *see* 8 U.S.C. § 1357, and § 1226(a) provides for arrest and detention "on a warrant issued by the Attorney General." And unlike § 1225, § 1226 makes no mention of "examination" or "inspection," which are terms generally used in the immigration laws to refer to the process of determining whether someone is entitled to enter. *See* 8 U.S.C. § 1225(a)(3)("Inspection"); 8 C.F.R. § 235.1 ("Examination").

Paredes Padilla's interpretation of § 1225(b)(2)(A) preserves the logical distinction between § 1225 and § 1226. He contends that detention under § 1225(b)(2)(A) is limited to those attempting to enter the United States at the border or a port of entry, which is consistent with the broader view that § 1225 applies to aliens attempting to enter and § 1226 applies to aliens already here. By contrast, the government's interpretation causes § 1225 and § 1226 to overlap. Individuals who are already live in the United States but who lack legal status would be detainable under *both* § 1225(b)(2)(A) and § 1226(a), an illogical result given that the statutes provide opposite guidance as to the availability of release on bond.

The government's reading would also render portions of § 1226 superfluous. As this court explained in *Quinapanta*, the recently enacted Laken Riley Act added language to § 1226 mandating detention when an individual (1) is inadmissible under § 1182(a)(6)(A) (a non-citizen present in the United States without having been admitted or paroled) and (2) has been arrested, charged, or convicted of certain crimes. 2025 WL 3157897, at *6 (citing 8 U.S.C. § 1226(c)(1)(E)). But under the government's reading of § 1225(b)(2)(A), *all* non-citizens who have not been admitted or paroled would be subject to mandatory detention, so there would be no need for § 1226 to mandate detention for a subset of those individuals. The Supreme Court has made clear that where possible, ""[a] statute should be construed so that effect is given to all its provisions[.]" *Corley*, 556 U.S. at 314. Paredes Padilla's interpretation gives effect to all the provisions of both § 1225 and § 1226. The government's interpretation does not.

Paredes Padilla's reading is also more consistent with the text of § 1225(b)(2)(A). For ease of reading, the court reproduces that text again here:

> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

The government says that the phrase "seeking admission" simply re-incorporates the requirement that the individual be an "applicant for admission." But the text doesn't support that reading, for two reasons.

First, when Congress uses different words in a statute, courts generally assume that the words mean different things. *Pulsifer v. United States*, 601 U.S. 124, 149 (2024). Here, "applying" for and "seeking" admission may be synonyms in a lay sense. But "applicant for

8

admission" is a defined term in the INA; its statutory meaning is broader than its plain meaning. 8 U.S.C. § 1225(a)(1) (anyone present in the country without have been admitted is "deemed" an applicant for admission). "Seeking admission" has no statutory definition, so it takes its plain meaning. *United States v. Johnson*, 47 F.4th 535, 543 (7th Cir. 2022). "Seeking" is a present participle, which implies a current action. *Corona Diaz*, 2025 WL 3022170, at *5 (citing *United States v. Balint*, 201 F.3d 928, 933 (7th Cir. 2000)). It strains credulity to suggest that all individuals passively residing in the United States without legal status are "seeking" admission as that word is commonly understood. The most logical interpretation is that "seeking admission" limits the application of § 1225(b)(2)(A) to those who are detained while attempting to enter the United States.

Second, the syntax of § 1225(b)(2)(A) undermines the government's contention that "applicant for admission" and "seeking admission" mean the same thing. The government's position implies that "seeking admission" simply refers back to "applicant for admission" in the antecedent phrase. That would make sense if the statute read:

> . . . in the case of an alien who is an applicant for admission, if the examining immigration officer determines that *the* alien seeking admission is not clearly and beyond a doubt entitled to be admitted . . .

It would also make sense if the statute read:

> . . . in the case of an alien who is an applicant for admission, if the examining immigration officer determines that *such* alien seeking admission is not clearly and beyond a doubt entitled to be admitted . . .

But the statute actually reads:

> . . . in the case of an alien who is an applicant for admission, if the examining immigration officer determines that *an* alien seeking admission is not clearly and beyond a doubt entitled to be admitted . . .

9

The words "such" and "the" are definite articles, which are often interpreted to refer back to reasonable antecedents. *E.g., United States ex rel. Lovell v. AthenaHealth, Inc.*, 56 F.4th 152, 158 (1st Cir. 2022) (citing A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts* 144 (2012)). But it doesn't make grammatical sense for the indefinite article "an" to refer back to an antecedent phrase in the same sentence. That suggests that Congress intended two different things by the phrases "applicant for admission" and "seeking admission."

The government presents four arguments to support its interpretation of § 1225(b)(2)(A), none of which the court finds persuasive. First, to support its contention that all applicants for admission are necessarily "seeking admission," the government points to § 1225(a)(3), which is entitled "Inspection," and which reads: "All aliens . . . who are applicants for admission or otherwise seeking admission . . . shall be inspected by immigration officers." The government argues that the phrase "*otherwise* seeking admission" implies that all applicants for admission are necessarily seeking admission. But in context, this phrase means only that some individuals who are seeking admission may not meet the statutory definition of an "applicant for admission," for example, if an individual applies for a visa at a consulate abroad. *See Romero v. Hyde*, No. CV 25-11631, 2025 WL 2403827, at *10 (D. Mass. Aug. 19, 2025); *Loa Caballero v. Baltazar*, No. 25-CV-03120, 2025 WL 2977650, at *6 n.4 (D. Colo. Oct. 22, 2025).

Second, the government says that Paredes Padilla's interpretation renders § 1225(b)(2) superfluous, because all arriving aliens would qualify for expedited removal under § 1225(b)(1), which has its own mandatory detention provision. But that's not accurate. Expedited removal under § 1225(b)(1) applies to arriving aliens who are "inadmissible under section

10

1182(a)(6)(C) or 1182(a)(7) of this title." Arriving aliens inadmissible for any other reason would be subject to mandatory detention under § 1225(b)(2).

Third, the government argues that § 1225 plainly applies to some non-arriving aliens, because it authorizes the Attorney General to designate for expedited removal any alien "who has not been admitted or paroled into the United States, and who has not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility." *Id.* § 1225(b)(1)(A)(iii)(II). The government is correct that that provision appears to give the Attorney General discretion to expand expedited removal to certain categories of aliens who are not recent arrivals. But the fact that the Attorney General can make certain exceptions to the general framework at her discretion doesn't call into question the framework itself; it remains true that § 1225 generally applies to aliens who are entering and that § 1226 generally applies to aliens already present. If anything, § 1225(b)(1)(A)(iii)(II) supports Paredes Padilla's position that Congress intended the INA to distinguish between inadmissible new arrivals and inadmissible aliens who had resided in the United States for years, because § 1225(b)(1)(A)(iii)(II) does *not* authorize the Attorney General to expand expedited removal to aliens who resided in the United States for more than two years.

Fourth, the government points to legislative history. Section 1225 and section 1226 were enacted in 1996 as part of the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA), a wide-ranging amendment to the INA. The government asserts that Congress passed the IIRIRA to eliminate provisions in previous law that had benefited non-citizens who entered the country illegally over those who entered lawfully. Dkt. 10, at 17–18. The

11

government argues that its interpretation of the mandatory detention provision supports this purpose, because it puts all individuals without legal status on the same footing, regardless of when they were apprehended.

The government is correct that Congress's general purpose in enacting the IIRIRA was to put "all immigrants who have not been lawfully admitted . . . on equal footing in removal proceedings under the INA." *Torres v. Barr*, 976 F.3d 918, 927–28 (9th Cir. 2020). As the Ninth Circuit explained in *Torres*, the IIRIRA accomplished this purpose by replacing the former two-tiered removal system (deportation proceedings for unlawful immigrants already here, exclusion proceedings for those trying to enter unlawfully) with a single type of removal proceeding for non-citizens who had not been admitted. *Id.* But nothing in the legislative history suggests that Congress intended the IIRIRA to prohibit bond hearings for non-citizens who were entitled to them under previous law. In fact, the House committee report states that the IIRIRA "restates the current provisions in section 242(a)(1) regarding the authority of the Attorney General to arrest, detain, and release on bond an alien who is not lawfully in the United States." H.R. Rep. 104-469, 229 (1996). *See also Rodriguez*, 779 F. Supp. 3d at 1260 ("Because noncitizens like Rodriguez were entitled to discretionary detention under Section 1226(a)'s predecessor statute and Congress declared its scope unchanged by IIRIRA, this background supports Rodriguez's position that he too is subject to discretionary detention.")

In sum, the court agrees with the overwhelming majority of district courts that non-citizens who have been residing in the country without legal status are entitled to bond hearings during the pendency of their removal proceedings under 8 U.S.C. § 1226(a). Paredes Padilla's request for habeas corpus relief under 28 U.S.C. § 2241 will be granted. Respondents

shall provide Paredes Padilla a bond hearing before an immigration judge within seven days of the date of this order.

ORDER

IT IS ORDERED that:

1. The petition for habeas corpus filed by Edwin Patricio Paredes Padilla, Dkt. 1, is GRANTED.

2. Respondent Robert Galovich is DISMISSED.

3. Within seven days, the federal government respondents shall provide Paredes Padilla a bond hearing before an immigration judge under 8 U.S.C. § 1226(a).

4. The clerk of court is directed to enter judgment for petitioner and close this case.

Entered November 21, 2025.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judger